**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Airman First Class NICHOLAS A. FIELDS**
**United States Air Force**

**ACM S32239**

**24 March 2015**

**_____ M.J. _____**

Sentence adjudged 21 April 2014 by SPCM convened at Eglin Air Force Base, Florida. Military Judge: Michael J. Coco (sitting alone).

Approved Sentence: Bad-conduct discharge, confinement for 4 months, forfeiture of $1,021.00 pay per month for 4 months, and reduction to E-1.

Appellate Counsel for the Appellant: Captain Jeffrey A. Davis.

Appellate Counsel for the United States: Major Roberto Ramirez and Gerald R. Bruce, Esquire.

Before

MITCHELL, WEBER, and CONTOVEROS
Appellate Military Judges

PUBLISHED OPINION OF THE COURT

MITCHELL, Senior Judge:

The appellant pled guilty to failure to obey a lawful order and wrongful use of cocaine on divers occasions, in violation of Articles 92 and 112a, UCMJ, 10 U.S.C. § 892, 912a. A military judge sitting alone as a special court-martial sentenced the appellant to a bad-conduct discharge, confinement for 4 months, forfeiture of $1,021 pay per month for 4 months, and reduction to E-1. The convening authority approved the sentence as adjudged.

The appellant asserts the following errors: (1) the appellant's plea to failure to obey an order of restriction was improvident because the "ultimate offense" was breaking restriction; (2) the appellant was subject to illegal post-trial punishment in violation of Article 57, UCMJ, 10 U.S.C. § 857; (3) there is post-trial processing error because the addendums to the staff judge advocate's recommendation fail to accurately address the legal error raised by the appellant; and (4) the appellant's sentence is inappropriately severe. We grant relief only on the issue of a violation of Article 57, UCMJ, and reassess the sentence accordingly.

*Background*

Pursuant to a pretrial agreement (PTA), the appellant pled guilty to divers uses of cocaine and failure to obey an order from his commander restricting him to base except for travel to and from medical and mental health appointments. The appellant admitted that on at least four occasions he ingested cocaine by snorting or smoking it.

*Ultimate Offense Doctrine*

We review a military judge's decision to accept a guilty plea for an abuse of discretion, and we review questions of law arising from the guilty plea de novo. *See United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). "In doing so, we apply the substantial basis test, looking at whether there is something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea." *Id.*; *see also United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991).[1] The military judge may consider both the stipulation of fact and his inquiry with the appellant when determining if the guilty plea is provident. *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014) (citing *United States v. Whitaker*, 72 M.J. 292, 293 (C.A.A.F. 2013)).

The appellant's First Sergeant, Master Sergeant (MSgt) JB, informed the appellant on 17 and 18 January that his commander, Lieutenant Colonel SM, had given him an order. The commander's order was that the appellant was restricted to base except for travel to and from medical appointments and mental health appointments. The appellant understood the order and knew he had a duty to obey the order. The appellant explained that the reason the order was given was the following: "It was basically for my safety and because I couldn't stop using on my own. So it was to protect me from going out and

---

[1] The Government argues that the appellant waived appellate review of this issue pursuant to a "waive all waivable motions" provision in his pretrial agreement (PTA). *See United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009). The Government's argument would presumably seek to have us summarily affirm guilty pleas in every case with this PTA provision, including those in which there is a substantial basis in law or fact to question the plea. *See, e.g., United States v. Weeks*, 71 M.J. 44 (C.A.A.F. 2011) (setting aside a guilty plea when it was based on trial judge's erroneous view of the law). The Government's argument would transform appellate review of the providence of a plea into an empty ritual. *See United States v. Soto*, 69 M.J. 304 (C.A.A.F. 2011). We reject this argument.

using [cocaine]." The appellant admitted it was a lawful order which he had a duty to obey, and the order was explicit that he was to "[g]o to [his] treatment and come back." The appellant violated the order by going to a treatment appointment but then not returning immediately to base. Instead he brought two females whom he had met to Wal-Mart; he then escorted one of them to a friend's house off-base, and he stayed at this off-base residence for the evening. The civilian female returned to base with the appellant and later informed investigators that the appellant had used cocaine the previous evening.

The appellant now challenges the providence of his plea to the charged offense of violating an order when the "ultimate offense" was instead breaking restriction. Our superior court has recently examined this issue in the context of Article 90, UCMJ, 10 U.S.C. § 890, and clarified that we are to rely solely on the standard established in the Manual for Courts-Martial (*MCM*). *United States v. Phillips*, __ M.J. __ 14-0199/AR (C.A.A.F. 6 January 2015).

> Since enactment of the UCMJ, the President has recognized the ultimate offense doctrine as it applies to the offense of disobeying a superior commissioned officer under Article 90, UCMJ: "Disobedience of an order which has for its sole object the attainment of some private end, or which is given for the sole purpose of increasing the penalty for an offense which it is expected the accused may commit, is not punishable under [Article 90]." *Manual for Courts-Martial*, United States (*MCM*) ch. XXVIII, ¶ 169.b. (1951 ed.); *accord MCM* pt. IV, ¶ 14.c.(2)(a)(iv) (2012 ed.)

*Phillips*, slip op. at page 5.

*Phillips* was an Article 90, UCMJ, case and our superior court expressly noted that the application of the ultimate offense doctrine as applied to Article 92, UCMJ, 10 U.S.C. § 892, was not before them. We find the logic highly persuasive and extend the same reasoning to Article 92, UCMJ. In describing the lawfulness of orders, Article 92, UCMJ, refers to Article 90, UCMJ, including the explanation listed above. *MCM*, Part IV, ¶ 16.c.(1)(c) (2012 ed.).

We consider the environment in which the order was given to determine if the "ultimate offense" doctrine applies. *United States v. Landwehr*, 18 M.J. 355, 357 (C.M.A. 1984). Here the appellant had voluntarily sought treatment for his cocaine addiction and was admitted to in-patient treatment. Three days after his release from the month-long in-patient treatment program, the appellant sought help from his unit because he feared for his own safety and decided to turn himself into law enforcement for his drug use. On 31 December 2013, the appellant was exhibiting signs of narcotics withdrawal

and admitted that he used cocaine earlier that morning, which was confirmed by urinalysis testing. The appellant also had two additional urinalysis tests that indicated he was using cocaine. Considering all the evidence regarding the order, to include the circumstances surrounding the order and the purpose of the order, we conclude that the ultimate offense doctrine is not applicable to the appellant's case. The military judge did not abuse his discretion in accepting the appellant's guilty plea.

*Illegal Punishment*

After the sentence was announced, the first sergeant, MSgt JB, ordered the appellant into the nearby restroom. SSgt AD was also present. MSgt JB told the appellant that he was reduced to E-1 and that MSgt JB did not want him to be out of uniform. MSgt JB braced himself against the appellant's shoulder and then, using his hand and either a key or small knife, ripped the stripes off his service dress uniform and then off his shirt. The appellant was visibly upset when he returned to the courtroom. Trial defense counsel immediately reported the incident to trial counsel and the staff judge advocate. Security forces was also notified of the alleged assault. When questioned by security forces, MSgt JB waived his Article 31, UCMJ, 10 U.S.C. § 831, rights and admitted to this conduct with the explanation that he thought the reduction was immediate.

Article 57(a)(1), UCMJ, provides that a reduction in rank is effective 14 days after the sentence is adjudged. The Government argues that there is no violation because there is no evidence that the appellant was improperly paid at the E-1 rate for those first 14 days. The appellant cites to an unpublished decision by this court in which we affirmed a bad-conduct discharge but set aside a reduction and hard labor without confinement when the Government in that case failed to award him with 13 days credit ordered by the military judge and required the immediate imposition of hard labor in violation of Article 57(c). *United States v. Adams*, ACM S26350 (A.F.C.M.R. 19 July 1984) (unpub. op.). In cases involving claims of Eighth Amendment[2] or Article 55, UCMJ, 10 U.S.C. § 855, violations, "we have not only the authority, but the obligation to question the severity of appellant's sentence as executed." *United States v. McPherson*, 72 M.J. 862, 872 (A.F. Ct. Crim. App. 2013). We do not find that the first sergeant's actions amounted to a violation of Article 55 or the Eighth Amendment. *Cf. United States v. Gerke*, 21 M.J. 300 (C.M.A. 1985) (finding that battalion commander who called the appellant a drug pusher unfit for service and had him transferred to confinement in front of a unit formation did not violate Article 55). However, we find that we have similar authority for violations of Article 57(a)(1). "A reduction carries both the loss of military status and the incidents thereof and results in a corresponding reduction of military pay." Department of the Army Pamphlet 27-9, *Military Judges' Benchbook*, ¶ 8-3-31 (10 September 2014). Although there is no evidence that the

---

[2] U.S. CONST. Amend. VIII.

appellant was paid at a reduced rate or reduced in rank in any official records, there is evidence that the appellant was publicly required to wear a torn uniform from which his rank had been forcibly removed—an intended loss of military status. Furthermore, this was the desired outcome of the first sergeant's actions in terms of visibly and immediately reducing the appellant's rank. The first sergeant's ignorance of the law does not excuse his actions.[3] We find a violation of Article 57, UCMJ.

Article 66(c), UCMJ, 10 U.S.C. § 866(c), provides us with the broad authority to grant relief even without a showing of prejudice when determining what sentence "should be approved" based on all the facts and circumstances of the case. *See United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002) (holding that service courts have authority to grant relief for excessive post-trial delay without showing of actual prejudice). However, this is not an unfettered authority. "Article 66(c), UCMJ, empowers the CCAs to 'do justice,' with reference to some legal standard, but does not grant the CCAs the ability to 'grant mercy.'" *United States v. Nerad*, 69 M.J. 138, 146, (C.A.A.F. 2010) (quoting *United States v. Boone*, 49 M.J. 187, 192 (C.A.A.F. 1998)). We conclude that the first sergeant, while acting under the mantle of command authority, intentionally engaged in action to prematurely punish the appellant. Pursuant to our authority under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we order a remedy that is appropriate to remove any error. *See United States v. Taylor*, 47 M.J. 322, 324 (C.A.A.F. 1997). Because the error was limited to an untimely attempt to effectuate a reduction in rank, we do not affirm that portion of the sentence.

*Post-Trial Processing*

The staff judge advocate's recommendation (SJAR) advised the convening authority to approve the sentence as adjudged. The appellant and his defense counsel raised legal errors in their submission about the Article 57, UCMJ, violation and the conditions of solitary confinement. The staff judge advocate (SJA) summarized both of these legal issues in the SJAR addendum and advised the convening authority that they were without merit. The appellant argues that the SJA's determination creates prejudicial error in the post-trial processing. We disagree.

Proper completion of post-trial processing is a question of law, which this court reviews de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citing *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)). When reviewing post-trial

---

[3] "It is an established legal maxim that ignorance of the law is no excuse." *United States v. McLeod*, 18 C.M.R. 814, 823 (A.F.B.R. 1955). *Cf. Heien v. North Carolina*, 135 S. Ct. 530, 539 (2014) ("The Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes—whether of fact or of law—must be *objectively* reasonable."). Reasonable mistakes of law are permitted to support probable cause determinations under the Fourth Amendment, however, the Supreme Court also clarified that a mistake of law cannot support a conviction. *Id.* at 540 ("[T]he government cannot impose criminal liability based on a mistaken understanding of the law.") Likewise, the Government or its agents should not be able to impose a premature punishment based on a mistake of law.

errors, we recognize the convening authority is an appellant's "best hope for sentence relief." *United States v. Lee*, 50 M.J. 296, 297 (C.A.A.F. 1999) (quoting *United States v. Bono*, 26 M.J. 240, 243 n.3 (C.M.A. 1988)) (internal quotation marks omitted). The convening authority, not a court of criminal appeals, is empowered to grant clemency for equitable reasons. *United States v. Nerad*, 69 M.J. 138, 145 (C.A.A.F. 2010). "Because of the highly discretionary nature of the convening authority's action on the sentence, we will grant relief if an appellant presents 'some colorable showing of possible prejudice.'" *Kho*, 54 M.J. at 65 (quoting *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998)); *see also United States v. Scalo*, 60 M.J. 435, 437 (C.A.A.F. 2005). The appellant can prove a colorable showing of possible prejudice by stating what, if anything, he would have submitted to deny, counter, or explain matters submitted by the Government. *United States v. Gilbreath*, 57 M.J. 57, 61 (C.A.A.F. 2002).

The appellant claims the SJA failed to accurately address the allegations of legal error raised in his clemency materials. Rule for Courts-Martial (R.C.M.) 1106(d)(4) requires the staff judge advocate to state whether corrective action on the findings or sentence should be taken when the defense clemency submissions allege legal error. Such response "may consist of a statement of agreement or disagreement with the matter raised by the accused. An analysis or rationale for the staff judge advocate's statement, if any, concerning legal error is not required." R.C.M. 1106(d)(4); *United States v. Catrett*, 55 M.J. 400, 407–08 (C.A.A.F. 2001). The addendum complied with this requirement.

The appellant relies on *United States v. Griffaw*, 46 M.J. 791 (A.F. Ct. Crim. App 1997), to argue that the SJA's advice must be accurate or else it results in a material prejudice requiring new post-trial processing. This court stated the following in *Griffaw*: "[T]he SJA must provide correct information to the convening authority. . . . [E]rroneous advice on substantial matters of fact or law will invalidate the action when the error prejudices the accused." *Id.* at 792. In *Griffaw*, we set aside the convening authority's action and returned the case for a new SJAR because the SJA had mistakenly advised the convening authority that a pretrial agreement sentence limitation was the same as a grant of clemency. In the area of addressing legal errors raised by the defense, we limit *Griffaw* to those times when the SJA's assessment of the legal error is clearly erroneous analysis or rationale contrary to well-established legal precedent. While we disagree with the SJA's assessment of the legal error on the illegal punishment, the SJA's advice to the convening authority was reasonable, and we find no legal error requiring us to return the case for new post-trial processing. Furthermore, to the extent that the SJA's advice in the addendum created any prejudicial error, we have mooted any prejudice in our sentence reassessment. *Cf. United States v. Hill*, 27 M.J. 293, 297 (C.M.A. 1988) (Cox, J., concurring) ("If a Court of Military Review intends to affirm a conviction even though an error in the legal review has been committed, it should make a clear finding of harmlessness to enable us to be satisfied that an accused has received not only fair appellate review, but also complete review.").

*Sentence Appropriateness*

The appellant's final contention is that his punishment was overly harsh, particularly because he received a bad-conduct discharge when other Airmen convicted of similar offenses have not.

In determining the appropriateness of a sentence, we are not required to engage in comparison with specific cases "except in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases." *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999) (quoting *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)). The "appellant bears the burden of demonstrating that any cited cases are 'closely related' to his or her case and that the sentences are 'highly disparate.'" *Id*. If the appellant satisfies his burden, the Government must then establish a rational basis for the disparity. *Id*. However, even when we are not required to compare a case to other specific cases, we use our collective knowledge in determining if a sentence is appropriate. *Ballard*, 20 M.J. at 286.[4] The appellant cites to the court-martial sentences of two other Airmen, Airman JD and Technical Sergeant JZ, who were convicted of the wrongful use of controlled substances and did not received a punitive discharge. We find that the appellant has failed to establish that these cases are closely related.

This court reviews sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we] find[] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ. "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record of trial." *United States v. Bare*, 63 M.J. 707, 714 (A.F. Ct. Crim. App. 2006); *see also United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982). Although we are accorded great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *Nerad*, 69 M.J. at 146; *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A. 1988).

---

[4]

> [T]he experienced and professional military lawyers who find themselves appointed as trial judges and judges on the courts of military review have a solid feel for the range of punishments typically meted out in courts-martial. Indeed, by the time they receive such assignments, they can scarcely help it; and we have every confidence that this accumulated knowledge is an explicit or implicit factor in virtually every case in which a military judge imposes sentence or a court of military review assesses for sentence appropriateness.

*United States v. Ballard*, 20 M.J. 282, 286 (C.M.A. 1985).

> "Absent evidence to the contrary, accused's own sentence proposal is a reasonable indication of its probable fairness to him." *United States v. Hendon*, 6 M.J. 171, 175 (C.M.A. 1979) (citing *United States v. Johnson*, 41 C.M.R. 49, 50 (C.M.A. 1969)). Of course, a court-martial can adjudge a sentence less than the limits in a PTA and may consider sentencing factors distinct from those in front of the convening authority. *Id.* An appellant who has been prejudiced by error may be entitled to sentence relief even if the adjudged sentence is less than limitation in the PTA. *United States v. Kinman*, 25 M.J. 99 (C.M.A. 1987). We recognize that the application of *Hendon* has been limited by our Navy colleagues in *United States v. Brandon*, 33 M.J. 1033 (N.M.C.M.R. 1991), and again in *United States v. Payne*, 1996 WL 927728, (N.M.C.M.R 1996). We have previously cited *Hendon* and relied on its rationale. *See United States v. El-Amin*, 38 M.J. 563 (A.F.C.M.R. 1993).

*United States v. Cron*, 73 M.J. 718, 736 n.9 (A.F. Ct. Crim. App. 2014).

Here the appellant was convicted of multiple uses of cocaine. This included the use of cocaine after he had completed an in-patient treatment program at the Government's expense. The appellant violated his commander's order, which he acknowledged was issued to protect him from himself, and left another treatment program to use cocaine with a civilian female whom he then brought onto base. The appellant received an earlier referral enlisted performance report in 2012/2013.

We also consider the limits of the PTA that the appellant voluntarily entered into with the convening authority. The appellant voluntarily agreed to a sentence cap that limited confinement to no more than six months but did not prevent the convening authority from approving a punitive discharge. We understand that a sentence within the limits of a PTA might be inappropriately severe, but this is not the case here. We have reviewed and considered this particular appellant, the PTA limits, the nature and seriousness of his offenses, his record of service,[5] and all matters contained in the record of trial, including his arguments on appeal. We find the appellant's approved sentence, as modified, appropriate.

---

[5] Prosecution Exhibit 4, a record of nonjudicial punishment, is illegible. We are able to read the appellant's response to the Article 15. We find that the omission of a legible copy of the Article 15 is insubstantial, and the record of trial is complete. *See United States v. Henry*, 53 M.J. 108, 111 (C.A.A.F. 2000). However, as substantial omissions render a record of trial incomplete, we again remind staff judge advocates of their duty to ensure the accuracy of the original record of trial.

*Conclusion*

We affirm only so much of the sentence as provides for a bad-conduct discharge, confinement for four months and forfeiture of $1,021 pay per month for four months. The approved findings and the sentence, as reassessed and modified, are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence, as reassessed and modified, are **AFFIRMED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court